UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CHAMBERS
U.S.D.C. Rome

JAN 3 1 2007

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

WILBUR FULLER, individually
and on behalf of all others
similarly situated,

      Plaintiff,

   v.

HOME DEPOT SERVICES, LLC; HOME
DEPOT U.S.A., INC.; THE HOME
DEPOT, INC.; and JOHN DOES 1
through 100,

      Defendants.

CIVIL ACTION

NO. 1:06-CV-1490-RLV

O R D E R

This is an action arising under the federal Racketeer Influenced and Corrupt Organization Act ("RICO"); the complaint also asserts state law fraud and negligent misrepresentation claims. The claims are based on the defendants' (hereinafter "Home Depot")[1] tool rental service offered at some Home Depot home improvement retail stores. The plaintiff alleges that Home Depot has engaged in a fraudulent scheme over the past ten years to induce tool rental customers into purchasing allegedly unnecessary damage protection. Pending before the court is Home Depot's Motion to Dismiss [Doc. No. 14-1] pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, the motion is GRANTED.

---

[1] The defendants are legally separate entities, Home Depot Services, LLC, Home Depot U.S.A., Inc., and the Home Depot, Inc., but the plaintiff's complaint attributes the allegedly wrongful conduct in his claims to all three defendants equally, and he labels all three as one entity: "Home Depot."

FACTUAL BACKGROUND AND ALLEGATIONS

On nine separate occasions, between April 1, 2005 and July 23, 2005, the plaintiff rented home improvement tools from one of four Atlanta area Home Depot stores.  On every occasion, the alleged sequence of events is substantively identical.  When the plaintiff rented a tool, the invoice automatically listed the price of the rental as well as an additional ten percent for "damage protection."  To complete the transaction, the plaintiff had to initial a block on the rental form indicating his consent to two separate questions: that he had been offered, but declined, the operating manuals for rented tools, and that he accepted the "damage protection" benefits offered by Home Depot.

However, according to the plaintiff, he was never offered an operating manual for any of the equipment he rented, and the "damage protection" plan offer deceived him into believing that it covered damage for which the plaintiff would otherwise be held liable.  Additionally, the plaintiff was required to use a credit card to complete the transaction.  On three of the nine occasions, the plaintiff did not initial the box indicating an election of the additional "damage protection," but he was nevertheless charged the additional ten percent. The alleged harm caused by Home Depot's scheme is the total of each ten percent "damage protection" fee charged to the plaintiff because he either did not consent to the protection or it was unnecessarily redundant.

The plaintiff further alleges that Home Depot's "damage protection" is deceptive because although it is listed as an optional feature, the standard practice is to automatically charge the additional ten percent for the "damage protection," regardless of whether a customer chooses the additional protection. Also, the additional protection apparently covers only the repair or replacement cost of equipment damaged during normal use, not the cost for damage or loss resulting from theft, misuse, or neglect. The plaintiff alleges that Home Depot's scheme deceives customers by not disclosing that the damage covered by the "damage protection" plan is already covered by each tool manufacturer's warranty and Home Depot's warranty. According to the plaintiff, when a customer rents a tool, he is advised by a Home Depot representative that without the protection plan they will be fully liable for all damage. However, the plaintiff alleges that regardless of whether a customer chooses the optional "damage protection" plan, the manufacturers' warranty and Home Depot's warranty will cover the same damage covered by the plan. Thus, Home Depot allegedly deceives customers into selecting an additional protection scheme that is unnecessarily redundant.

According to the plaintiff, this scheme defrauds tool rental customers into purchasing unnecessary protection that amounts to an additional ten percent of the rental fee. In other words, through its scheme, Home Depot offers its tools for rent at one price but then through its misleading rental agreement and invoice practice,

automatically charges customers an additional ten percent while offering no additional service or protection that is not already offered by either the tool manufacturer or Home Depot itself. The plaintiff claims that Home Depot's allegedly fraudulent scheme is illegal under federal RICO provisions and state law.

MOTION TO DISMISS

Under Fed. R. Civ. P. 12(b)(6), a motion to dismiss for failure to state a claim is granted "when the movant demonstrates beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Jackson v. Bellsouth Telecommunications, 372 F.3d 1250, 1262 (11th Cir. 2004). When a court considers a Rule 12(b)(6) motion, the allegations in the complaint must be accepted as true and construed in a light most favorable to the plaintiff. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). Although there is not a high standard for the plaintiff in a motion to dismiss, the pleadings must "do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal." Jackson, 373 F.3d at 1263.

Home Depot's motion asserts that the plaintiff's complaint insufficiently states its claims under both federal RICO statutes and the state law claims of fraud and negligent misrepresentation. Because the RICO claims under 18 U.S.C. § 1962 are the basis of this court's jurisdiction under 28 U.S.C. § 1331, those claims are addressed first.

4

To prevail on a civil RICO claim, a plaintiff must prove three essential elements: "(1) a violation of section 1962; (2) injury to business or property; and (3) that the violation caused the injury." Avirgan v. Hall, 932 F.2d 1572, 1577 (11th Cir. 1991). Section 1962 provides four subsections under which a plaintiff may claim a RICO violation. Each of the four subsections allows for a different cause of action depending on the defendant's alleged conduct in relation to an enterprise. Notably, the plaintiff's complaint alleges that Home Depot's "damage protection" scheme violates all four subsections.

The essence of all four claims is that Home Depot's "damage protection" scheme constituted an illegal enterprise. The underlying illegal conduct, i.e., predicate acts, of racketeering was the mail and wire fraud allegedly committed by Home Depot when it processed the protection plan fees via credit card transactions that utilized interstate wire communications lines. This enterprise allegedly harmed the plaintiff when it charged him the additional ten percent over and above the rental fee for each tool rental. Thus, the plaintiff's harm resulted from the commission of the predicate acts while Home Depot was engaged in its illegal enterprise.

Section 1962(a)

Under section 1962(a) it is unlawful to invest income derived from a pattern of racketeering in an enterprise. Bill Buck Chevrolet, Inc. v. GTE Florida, Inc., 54 F. Supp. 2d 1127, 1132

(M.D. Fla. 1999).  By claiming that Home Depot's scheme violated §
1962(a), the plaintiff must allege that he has been injured as a
result of Home Depot investing income derived from operating its
enterprise.  See Pelletier v. Zweifel, 921 F.2d 1465, 1518 (11th
Cir. 1991).  The plaintiff's claim is that Home Depot received
income from a pattern of racketeering when it processed the "damage
protection" fees via credit card transactions and then invested
that income back into the operation of the "damage protection"
scheme.  However, the plaintiff does not claim any injury resulting
from Home Depot's alleged investing of the racketeering income.
His only alleged injury resulted from the underlying predicate act
of mail and wire fraud, i.e., the harm to the plaintiff was his
being charged money.  At issue, therefore, is whether the plaintiff
has sufficiently pled an injury under § 1962(a).

This issue apparently has not been addressed by the Eleventh
Circuit.  While the injury requirement under § 1962(c) may be
satisfied by alleging injury caused by the racketeering activity
itself, to require the same showing under § 1962(a) would render
any difference between the two sections meaningless.  The majority
of courts that have addressed this issue have adopted a more
restrictive rule that limits standing under § 1962(a) to only
allegations of an injury that results from the investment of the
racketeering proceeds, not an injury resulting from the underlying

racketeering activity itself.[2]  <u>Lockheed Martin Corp. v. Boeing</u> <u>Co.</u>, 357 F. Supp. 2d 1350, 1369-71 (M.D. Fla. 2005).  Similarly, this court adopts that majority rule and holds that merely alleging reinvestment of racketeering proceeds into the enterprise is insufficient to state a claim under § 1962(a).

To sufficiently plead an injury under this subsection, the plaintiff must allege that he sustained injury from Home Depot's investment of racketeering income.  <u>Club Car, Inc. v. Club Car</u> <u>(Quebec) Import, Inc.</u>, 276 F. Supp. 2d 1276, 1288 (S.D. Ga. 2003), <u>aff'd on other grounds</u>, 362 F.3d 775 (11th Cir. 2004).  However, the plaintiff's complaint does not allege any injury resulting from Home Depot's investment of racketeering income.  The complaint merely alleges injury as a result of Home Depot's alleged racketeering activity, mail and wire fraud.  Consequently, the plaintiff's claim under § 1962(a) is insufficient and Count I of the plaintiff's amended complaint is dismissed.

<u>Section 1962(b)</u>

Under § 1962(b), "it is unlawful for a person to acquire or maintain, through a pattern of racketeering activity, an interest in an enterprise."  <u>Club Car</u>, 276 F. Supp. 2d at 1288.  Thus, sufficiently alleging a § 1962(b) violation requires a complaint to

---

[2]For a complete discussion of the circuit split regarding the different injury requirements under § 1962(a-c), see <u>Lockheed</u> <u>Martin</u>, 357 F. Supp. 2d at 1368-1371 ("If plaintiff's reinvestment injury concept were accepted, almost every pattern of racketeering activity by a corporation would be actionable under § 1962(a), and distinction between § 1962(a) and § 1962(c) would be meaningless.")

allege injury as a result of the defendant "acquiring or maintaining, through a pattern of racketeering activity, an interest in or control over such enterprises." Pelletier, 921 F.2d at 1518.   Just as § 1962(a) requires an investment injury, § 1962(b) requires an acquisition injury.

However, while the plaintiff does allege that Home Depot acquired an interest in an enterprise through its racketeering activity (mail and wire fraud), the plaintiff does not allege that his injury resulted from Home Depot's alleged acquisition. Rather, the only injury alleged in the complaint is that the plaintiff was charged money by Home Depot during the commission of its predicate acts.   Therefore, the plaintiff's claim under § 1962(b) fails to state a claim upon which relief can be granted, and Count II of the amended complaint is dismissed.

Section 1962(c)

Under § 1962(c), it is unlawful for any person to conduct or participate in an enterprise through a pattern of racketeering; however, the same person or entity cannot be named as both a "person" and the "enterprise" under the statute.   United States v. Goldin Indus., Inc., 219 F.3d 1271, 1275 (11th Cir. 2000).   At issue is whether the plaintiff has sufficiently pled his § 1962(c) claim and alleged the existence of a "person" that is separate and distinct from the "enterprise" that is engaged in racketeering activity.   Club Car, 276 F. Supp. 2d at 1288.

8

The essence of a § 1962(c) claim is that the plaintiff must allege injury resulting from the defendants' conduct or participation in an enterprise through a pattern of racketeering activity. Pelletier, 921 F.2d at 1518.  An "enterprise" can be shown by the existence of "an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." Goldin, 219 F.3d at 1275.  Thus, as the Eleventh Circuit has stated: "[T]he definitive factor in determining the existence of a RICO enterprise is the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes, that is, the pattern of racketeering activity." Id.  The plaintiff's complaint alleges that Home Depot constitutes an enterprise because it has established the "damage protection" scheme, which allegedly facilitates the commission of the underlying racketeering activity, mail and wire fraud. Accordingly, it is clear that the plaintiff has sufficiently pled the existence of an "enterprise" to survive a motion to dismiss.

However, the plaintiff's complaint also alleges that the Home Depot is the "person" that has conducted and participated in that "enterprise."  The specific allegation is that Home Depot not only "devised a scheme or artifice to defraud" but that it also "acted with a specific intent to defraud by devising, participating in, and/or abetting the scheme." [Pl.'s Compl. 32, Doc. No. 1-1.] Thus, the plaintiff has alleged that Home Depot is both the

9

"enterprise" and the "person" under the statute, which cannot support an imposition of liability under § 1962(c).[3]  Consequently, the plaintiff has not pleaded sufficiently the existence of an "enterprise" that is separate and distinct from the "person" under the statute.   Therefore, the plaintiff's § 1962(c) must fail and Count III of the amended complaint is dismissed.

Section 1962(d)

Under § 1962(d), it is unlawful to enter into a conspiracy with the intention of violating any other part of § 1962.  Although a defendant can be held liable for a conspiracy even if it is not liable for the underlying offense, "what *is* required to support a claim of RICO conspiracy is that plaintiffs allege an illegal agreement to violate a substantive provision of the RICO statute." Jackson v. Bellsouth, 372 F.3d at 1269 (emphasis in original).  To sufficiently state a conspiracy claim, therefore, the complaint must allege the existence of an agreement "to commit an act that is itself illegal—parties cannot be found guilty of conspiring to commit an act that is not itself against the law." Id. (Internal

_____

[3]It is admittedly true that related corporations, such as those in a parent-subsidiary relationship, that are named as defendants (i.e., a "person"), may be sufficiently distinct from the alleged "enterprise" to be liable under § 1962(c). Goldin, 219 F.3d at 1277.  However, while  the defendants in this case are similarly in a parent-subsidiary relationship, the plaintiff has nevertheless treated the defendants as one collective entity. Aside from his introduction, the plaintiff does not distinguish the defendants from one another in any way whatsoever.  Because the plaintiff has described and treated the defendants as one entity, so too has this court, and this precludes a determination that each corporation is distinct from the association of all three which allegedly constitutes the "enterprise."

quotations omitted).  Accordingly, if the underlying allegations of RICO violations are not viable, a conspiracy claim based on those violations must also fail.

This court has already concluded that the plaintiff has failed to sufficiently state a substantive RICO claim against Home Depot. Therefore, the plaintiff's conspiracy claim alleges conduct that is not illegal and, consequently, the plaintiff's § 1962(d) claim must fail.  Count IV must be dismissed for failure to state a claim upon which relief can be granted.

### Fraud & Negligent Misrepresentation

Because this court hereby dismisses the plaintiff's federal RICO claims, this court declines to exercise supplemental jurisdiction over the remaining state law claims.  Consequently, those claims are dismissed without prejudice.

CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss [Doc. No. 14-1] is GRANTED with respect to the plaintiff's RICO claims and those claims are dismissed with prejudice.  The court declines to exercise supplemental jurisdiction over the plaintiff's state law claims, and those claims are dismissed without prejudice.

SO ORDERED, this 31st day of January, 2007.

ROBERT L. VINING, JR.
Senior United States District Judge

11